Mr. R.D. Smith Chief of Police City of Perry Post Office Drawer 109 Perry, Florida 32347
Dear Chief Smith:
This is in response to your request for an opinion on substantially the following questions:
 (1) IS A MUNICIPAL POLICE DEPARTMENT A LAW ENFORCEMENT AGENCY WITHIN THE PURVIEW OF s 365.16(4), F.S.?
 (2) IS A MUNICIPAL POLICE DEPARTMENT A "LAW ENFORCEMENT AGENCY" AS THAT TERM IS DEFINED IN s 934.02(10), F.S., FOR PURPOSES OF CH. 934, F.S., THE SECURITY OF COMMUNICATIONS LAW?
According to your letter, a problem has arisen in the City of Perry with regard to the tracing of harassing telephone calls by the telephone company on behalf of the municipal police department. You indicate that your office recently received a letter from the attorney for Gulf Telephone Company, Perry, Florida, in which he stated that, in his opinion, a municipal corporation is not a political subdivision of the state and therefore the police department of the City of Perry does not qualify as a "law enforcement agency" or "investigative or law enforcement officer" for the purposes of Ch. 934, F.S., the Security of Communications Law. You state that the telephone company has therefore refused to trace harassing telephone calls based upon the municipal police department's official reports. You therefore inquire as to whether under existing law the telephone company may utilize its facilities to trace harassing calls for the municipal police department.
QUESTION ONE
Section 365.16, F.S., provides that it is unlawful to use, or to permit another to use, the telephone to make obscene calls or to intentionally harass another by anonymous calls, repeated calls or causing the telephone of another to ring repeatedly. See, s365.16(1) and (2), F.S., stating that such actions are misdemeanors of the second degree punishable as provided in s775.082 or s 775.083, F.S. Subsection (4) of s 365.16 provides that "[e]ach telephone company in this state shall cooperate with the law enforcement agencies of this state in using its facilities and personnel to detect and prevent violations of this section." The terms of s 365.16(4) are separate and distinct from, and independent of, the provisions of Ch. 932, the Security of Communications Law, and affirmatively impose a duty upon the telephone companies within the state to assist law enforcement agencies in the use of their facilities to detect and prevent obscene or harassing telephone calls. Law enforcement agency is not defined for purposes of this section; definitions of this term or similar terms in related statutes concerning the activities of law enforcement agencies may therefore be looked to and read with s 365.16 to glean its meaning. Cf., Krause v. Reno,366 So.2d 1244, 1252 (3 D.C.A.Fla., 1979); Goldstein v. Acme Concrete Corporation, 103 So.2d 202, 204 (Fla. 1958). See, s 943.10(1), F.S., defining law enforcement officer to include a municipal officer who is vested with the authority to bear arms and make arrests and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic or highway laws of the state. See also, s 316.640(3) (police department shall enforce state traffic laws on streets within municipality and elsewhere throughout the municipality wherever the public has a right to travel by motor vehicle); s901.15 (arrests by peace officers without warrant); s 901.25
(fresh pursuit and arrest outside jurisdiction by duly authorized state, county or municipal arresting officer for a felony, misdemeanor or violation of city ordinance); s 790.001(8)(a) (including municipal officers with arrest power within definition of "[l]aw enforcement officer"); and s 790.02 (empowering any officer authorized by law to make arrests, to arrest violators of the concealed weapons statute without a warrant). And see, Black's Law Dictionary, Peace Officer p. 1287 (includes members of the police force of cities and other officers whose duty is to enforce and preserve the public peace). It is common knowledge that municipal police officers are regularly enforcing the state's criminal laws. See generally, AGO 71-41 (municipal police officer, like sheriff, is a peace officer and has same duty to arrest for felony within his municipality that the sheriff has throughout the county). Cf., Alexander v. State, 150 So.2d 204, 206 (Ala. 1963) (policeman has duty of not only enforcing municipal ordinances or by-laws but responsibility of enforcing state criminal laws and is charged with duty of making arrests for such violations). And see, AGO 76-139 stating that a municipal police officer who arrests a person for a violation of a state criminal statute is acting on behalf of the state.
Based upon the foregoing, it appears clear that "law enforcement agencies" as used in s 365.16, F.S., encompasses a municipal police department whose officers are charged with enforcing not only municipal ordinances but the criminal and traffic laws of this state and are authorized to make arrests for violations thereof. Accordingly, I am of the opinion, until and unless judicially or legislatively determined otherwise, that a municipal police department is within the purview of s 365.16(4) and telephone companies within the state are required to assist the municipal police in using its facilities and personnel to detect and prevent obscene or harassing telephone calls.
QUESTION TWO
As stated in the introductory legislative findings to Ch. 934, F.S., the Security of Communications Law, in order to safeguard the privacy of innocent persons, the interception of wire or oral communications should only be allowed in narrowly prescribed circumstances. Section 934.01, F.S. See, s 934.03, F.S., which provides that unless specifically authorized by some provision of Ch. 934, any person who willfully intercepts or attempts to intercept any wire or oral communication shall be guilty of a felony of the third degree. See also, s 934.10, F.S., which authorizes the recovery of civil damages from interception, disclosure or use of wire or oral communications in violation of the chapter. Subsection 2(a)2. of s 934.03, F.S., however, provides that it is not unlawful under Ch. 934 for an officer, employee, or agent of any communication common carrier to provide information, facilities or technical assistance to an investigative or law enforcement officer who, pursuant to the chapter, is authorized to intercept a wire or oral communication. See, s 934.03(2)(c) stating that it is lawful for a law enforcement officer, or person acting under the direction of a law enforcement officer, to intercept a wire or oral communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act. Cf., s 934.03(2)(f), making lawful certain interceptions of wire communications and requiring telephone company employees to notify local police authorities within 48 hours after the time of such interceptions.
"Law enforcement agency" is defined in s 934.02(10), F.S., for purposes of Ch. 934 to mean:
 [A]n agency of the state or a political subdivision thereof or of the United States if the primary responsibility of the agency is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state and if its agents and officers are empowered by law to conduct criminal investigations and to make arrests.
And see, s 934.02(6), F.S., which defines "investigative or law enforcement officer" as "any officer of the state or political subdivision thereof . . . who is empowered by law to conduct investigations of, or to make arrests for, offenses enumerated in this chapter . . . ." You inquire as to whether a municipality is a "political subdivision" as used in s 934.02(6) and (10) to define "investigative or law enforcement officer" and "law enforcement agency."
Generally, in other contexts, it has been held that to the extent that governmental functions are discharged, a municipality exercises attributes of sovereignty and, as such, is a political subdivision or arm of the state and that within its restricted orbit, a municipality is as much a political subdivision of the state as are counties. See, West v. Town of Lake Placid,120 So. 361, 366 (Fla. 1929) (in its purely governmental relations, a municipality is a subordinate political subdivision of the state, created for purposes of local government); City of Miami v. Lewis,104 So.2d 70, 72 (3 D.C.A.Fla., 1958). See also, Loeb v. City of Jacksonville, 134 So. 205, 208 (Fla. 1931) (in its public character a municipality is the agent of the state acting as an arm of the sovereignty of the state and exercising, to the extent that they have been granted, the governmental functions and powers of the state). And see, State v. City of Auburndale, 85 So.2d 611, 613
(Fla. 1956) (within orbit of authority granted to it by the state, a municipality is an instrumentality or auxiliary agency of the state established for the more convenient administration of local government; subject to certain restrictions, a municipal corporation is in substantial measure merely a projection of state government to the local level).
"Political subdivision" is not expressly defined in Ch. 934, F.S., nor am I aware of any appellate court decision which has directly considered and interpreted this term for purpose of the Security of Communications Law. In the absence of any definition of this term in, or for the purposes of, Ch. 934, reference must be made to the definition of "political subdivision" contained in s1.01(9), F.S., which states in pertinent part that in construing the statutes and each and every word, phrase or part thereof, where the context will permit:
 The words "public body," "body politic" or "political subdivision" include counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts and all other districts in this state. (e.s.)
See, AGO 77-130 wherein this office stated that the definitions provided in s 1.01 "are to be applied in construing any section of the Florida Statutes, where the context will permit (and where a specific definition is not provided for use with the particular section being construed)." And see, AGO 81-6 in which this office concluded that the term "political subdivision" as used in s286.0105 encompasses municipalities and thus the municipal government boards, agencies or authorities thereof are subject to the notice requirements set forth therein.
I am not unmindful of this office's opinion in AGO 75-264 wherein this office concluded that a municipal corporation was not a political subdivision of state government within the purview of ss 287.25 and 287.26, F.S.; such a determination was based upon an examination of the statutes' underlying legislative intent. Unlike the situation in AGO 75-264, however, the context of Ch. 934 and s934.02(6) and (10), F.S., permits application of the statutory definition of "political subdivision" in s 1.01(9), F.S. Cf., AGO 78-155 in which it was concluded that municipalities were included within the definition of the term "body" as used in s 153.12(2)(b) since no provision of that statute defined the term and since the language of Part I, Ch. 153, did not inhibit such a construction or manifest any legislative intent to the contrary. Section934.02(10) in defining "law enforcement agency" refers to those agencies whose primary responsibility is the prevention and detection of crime or the enforcement of the state's penal and traffic laws and whose agents and officers are empowered to conduct criminal investigations and to make arrests. A municipal police department clearly satisfies the foregoing requirements. It is common knowledge that municipal police officers are enforcing the criminal laws of the state within their respective jurisdictions. See generally, AGO's 72-346, 75-47 and 76-139 wherein this office stated that a municipal police officer who arrests a person for a violation of a state criminal statute is acting on behalf of the state; and AGO 71-41 stating that a municipal police officer, like a sheriff, is a peace officer and has the same duty to arrest for a felony within his municipality that the sheriff has throughout the county. Cf., Payne v. State,114 S.E. 226 (Ga.Ct.App. 1922), and Whaley v. Jansen, 256 Cal.R. 184, 188 (Cal.D.Ct. 1962), wherein municipal police officers in other jurisdictions were held to be officers of the state within the meaning of that state's penal code; and see Alexander v. State, supra, stating that policeman has duty of not only enforcing municipal ordinances or by-laws but responsibility of enforcing state criminal laws and is charged with duty of making arrests for such violations. See, e.g., s 316.640(3), F.S., stating that the police department of each chartered municipality shall enforce the traffic laws of this state on all the streets and highways thereof and elsewhere throughout the municipality whenever the public has the right to travel by motor vehicle. And see, s 901.15 (arrests by peace officer without warrant), and s901.25 (fresh pursuit and arrest outside jurisdiction by duly authorized state, county or municipal arresting officer); s 933.07
(search warrant may be issued to any police officer). Cf., Black's Law Dictionary Peace Officer p. 1287 ("includes sheriffs and their deputies . . . members of the police force of cities and other officers whose duty is to enforce and preserve the public peace").
Moreover, while my examination of the judicial decisions interpreting the provisions of Ch. 934 failed to reveal any decision where the precise question presented in the instant inquiry was raised, the courts have considered the applicability of the act's provisions when such communications were intercepted by police officers. See, e.g., Wilson v. State, 403 So.2d 982 (1 D.C.A.Fla., 1980) (since police officers acted outside of their territorial jurisdiction, they were not entitled to use provisions of s 934.03[2][c]; Chiarenza v. State, 406 So.2d 66 (4 D.C.A.Fla., 1981) (evidence consisting of tape recordings made by police by virtue of a transmitter placed in the home of a police informant was admissible under s 934.03[2] since interception occurred under police supervision in a place other than defendant's home). Cf., AGO 79-93 wherein this office stated that a municipal police department, being a law enforcement agency, is not of a similar character, class or kind to the statutorily described ambulance service, fire station or public utility and thus not included in the phrase "any other entity" which followed the enumeration of these classes in s 934.03(2)(g), F.S. 1979.
Accordingly, based upon the foregoing and in light of the provisions of s 1.01(9), F.S., I am of the opinion that, until and unless judicially or legislatively determined to the contrary, a municipal police department is included within the term "law enforcement agency" as used in Ch. 934, F.S.
In sum, I am of the opinion that a municipal police department is a law enforcement agency for purposes of the Security of Communications Law, Ch. 934, F.S., and for purposes of s 365.16, F.S., directing telephone companies within the state to assist law enforcement agencies in the detection and prevention of obscene or harassing telephone calls.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General